UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------X

CARLOS AGUILAR, on behalf of himself and
all other similarly situated,

                      Plaintiffs,

          -against-

OSWALD HOME IMPROVEMENT INC.,         **ORDER**
A&L HOME IMPROVEMENT INC.,              22 CV 7152 (CLP)
OSWALD WILLIAMSON, and ALTON
WILLIAMSON,

                      Defendants.

----------------------------------------------------------X

**POLLAK**, United States Magistrate Judge:

On November 23, 2022, plaintiff Carlos Aguilar ("plaintiff") filed a complaint against defendants Oswald Home Improvement Inc. ("OHI"), A&L Home Improvement Inc. ("A&L"), Oswald Williamson ("O. Williamson"), and Alton Williamson ("A. Williamson"), alleging violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, et seq., and the New York Labor Law ("NYLL") §§ 190 et seq. and 650, et seq. (Compl.[1]) Plaintiff commenced this action to recover unpaid wages, unpaid overtime wages, and damages for wage statement and wage notice violations. (Id. ¶¶ 67–84).

The parties attended mediation on June 6, 2023 and a settlement was reached. (See ECF No. 10; see also Agr.[2]). On July 10, 2023, plaintiff filed a joint motion for settlement approval.[3]

---

[1] Citations to "Compl." refer to the Complaint, filed on November 23, 2022. (ECF No. 1)
[2] Citations to "Agr." refer to the Settlement Agreement and Release, attached to plaintiff's letter motion for settlement approval ("Pl.'s Ltr.," ECF No. 12), and filed on July 10, 2023. (ECF No. 12 at 6–12). The parties later filed an executed version of the Agreement on August 15, 2023. (ECF No. 15 at 1–8).
[3] On July 3, 2023, the parties submitted their consent to Magistrate Judge jurisdiction (see ECF No. 11), which was then approved by the district court on July 4, 2023. (ECF No. 13).

1

On July 26, 2023, this Court held a fairness hearing on the motion, pursuant to <u>Cheeks v. Freeport Pancake House</u>, 796 F.3d 199 (2d Cir. 2015).

For the reasons set forth in this Order, the Court approves the parties' settlement agreement as fair and reasonable and approves plaintiff's request for attorneys' fees. Although the Complaint was filed as a putative collective action, no certification had been sought or granted; therefore, the matter is being settled as to the named plaintiff only.

FACTUAL AND PROCEDURAL BACKGROUND

According to plaintiff, defendants operate a home improvement and construction business. (Compl. ¶ 23). Plaintiff alleges that O. Williamson is the owner and manager of OHI, a business located at 19 Paerdegat 5th Street, Brooklyn, NY 11236, and defendant A. Williamson is a manager and owner of OHI and the owner and manager of A&L, a business located at 1148 101st Street, Brooklyn, NY 11236. (<u>Id.</u> ¶¶ 12–14, 17). He claims that all defendants had an annual gross volume of sales of at least $500,000, had employees regularly engaged in the production of goods for commerce, and constituted employers within the meaning of the FLSA and NYLL. (<u>Id.</u> ¶¶ 19, 21, 22). Plaintiff also alleges that O. Williamson had the power to hire and fire plaintiff and control wages, and that A. Williamson would regularly give out work orders and sometimes distribute wages. (<u>Id.</u> ¶¶ 14, 18).

From about 1999 until July 2022, plaintiff was employed as a construction worker by defendants. (<u>Id.</u> ¶¶ 8, 25). Plaintiff also alleges that he was paid a daily rate between $150 and $200 and was regularly scheduled to work from 5 to 7 days per week, for roughly 8 hours a day (from 8:00 a.m. to 4:00 p.m.). (<u>Id.</u> ¶¶ 34, 36, 38). Plaintiff alleges that in the warmer months, he regularly worked 7 days a week. (<u>Id.</u> ¶ 37). Plaintiff allegedly would regularly work between two and four hours beyond his scheduled shift, often until 8:00 p.m. (<u>Id.</u> ¶ 39). Plaintiff alleges

2

that he was not compensated for all of the hours he worked and he was not paid an overtime rate. (Id. ¶¶ 40–43). Defendants allegedly also failed to keep accurate records and failed to provide plaintiff with accurate wage statement and notices. (Id. ¶¶ 44–48).

On July 10, 2023, plaintiff submitted a motion for settlement approval, along with copies of the unexecuted settlement agreement (the "Agreement") and unexecuted confessions of judgment. The parties propose to settle all of plaintiffs' claims for a total of $60,000. (Agr. ¶ 2; Pl.'s Ltr. at 1). Of the total settlement amount, plaintiff will receive $39,058.67, and his counsel seeks $19,529.33 in fees and $1,412 in costs. (Pl.'s Ltr. at 2 & n.2).

## DISCUSSION

### I. Legal Standards

In determining whether to approve an FLSA settlement, courts consider whether the agreement "reflects a 'reasonable compromise of disputed issues [rather] than a mere waiver of statutory rights brought about by an employer's overreaching.'" Le v. Sita Info. Networking Computing USA, Inc., No. 07 CV 86, 2008 WL 9398950, at *1 (E.D.N.Y. June 12, 2008) (alteration in original) (quoting Lynn's Food Stores, Inc. v. United States, 679 F.2d 1350, 1354 (11th Cir. 1982) (holding that, where an FLSA settlement is a reasonable compromise, the settlement should be approved to "promote the policy of encouraging settlement of litigation")). Courts have identified several factors to consider when determining whether a proposed settlement is fair and reasonable, including:

> (1) the plaintiff's range of possible recovery; (2) the extent to which 'the settlement will enable the parties to avoid anticipated burdens and expenses in establishing their respective claims and defenses'; (3) the seriousness of the litigation risks faced by the parties; (4) whether 'the settlement agreement is the product of arm's-length bargaining between experienced counsel'; and (5) the possibility of fraud or collusion.

3

Wolinsky v. Scholastic, Inc., 900 F. Supp. 2d 332, 335 (S.D.N.Y. 2012) (quoting Medley v. American Cancer Soc., No. 10 CV 3214, 2010 WL 3000028, at *1 (S.D.N.Y July 23, 2010)); see also Cohetero v. Stone & Tile, Inc., No. 16 CV 4420, 2018 WL 565717, at *6 (E.D.N.Y. Jan. 25, 2018) (endorsing the factors from Wolinsky).

"When presented with a settlement for approval, a district court's options are to (1) accept the proposed settlement; (2) reject the proposed settlement and delay proceedings to see if a different settlement can be achieved; or (3) proceed with litigation." Fisher v. SD Prot. Inc., 948 F.3d 593, 606 (2d Cir. 2020) (citing Evans v. Jeff D., 475 U.S. 717, 727 (1986)). "[E]ven though a district court has a duty to review an FLSA settlement for reasonableness to prevent any potential abuse, this does not grant the court authority to rewrite contract provisions it finds objectionable." Id. at 606. Rather, if a court finds one or more provisions of an FLSA settlement agreement to be unreasonable, the court must reject the proposed settlement. Id. at 605.

II. Settlement Terms

The Court finds that the terms of the Agreement are fair and reasonable. The Court notes that the Agreement does not contain any confidentiality clauses, bans on future employment, broad general releases, or non-disparagement clauses that do not contain a carve-out for truthful statements, all of which have previously been rejected by courts in this Circuit. See Ortiz v. My Belly's Playlist LLC, 283 F. Supp. 3d 125, 126 (S.D.N.Y. 2017) (holding that a settlement clause in which plaintiffs agree to never seek re-employment with defendant contravenes the FLSA); Lopez v. Bell Blvd Bakery LLC, No. 15 CV 6953, 2016 WL 6156199, at *2 (E.D.N.Y. Oct. 3, 2016) (explaining that confidentiality and broad general release clauses are impermissible) (collecting cases), report and recommendation adopted, 2016 WL 6208481 (E.D.N.Y. Oct. 21, 2016); Martinez v. Gulluoglu LLC, No. 15 CV 2727, 2016 WL 206474, at *1 (S.D.N.Y. Jan. 15,

2016) (holding that for a non-disparagement clause to be permissible in an FLSA settlement agreement, "it must include a carve-out for truthful statements about plaintiffs' experience litigating their case"). Specific terms are discussed in turn below.[4]

### A. Settlement Amount

The total proposed settlement amount is $60,000; plaintiff will receive $39,058.67. (Pl.'s Ltr. at 2). Plaintiff estimates that the total settlement amount represents almost half of his owed unpaid overtime wages, or $130,845. (Id.) Plaintiff explains that he believes the settlement amount to be fair and reasonable because he receives his money much sooner than if he had proceeded to trial and faced significant risks associated with proceeding to trial. (Id. at 1–2). In particular, plaintiff did not have any records indicating all the hours he claimed to have worked and he anticipated having difficulty identifying witnesses who could corroborate his hours. (Id. at 2). Plaintiff "also did not want to take time off from work for depositions, settlement conferences, and trial." (Id.) All parties therefore found the settlement amount to represent "a fair and equitable compromise that allows them to proceed with their personal and work lives without the disruptions, inconveniences, and risks inherent in litigation." (Id.)

Weighing the settlement amount agreed to here against the inherent risks and burdens that plaintiff would face in pursuing his claims, and seeing no issues regarding potential

---

[4] The Court notes that both O. Williamson and A. Williamson have executed Confessions of Judgment, providing that in the event of default by defendants, judgments may enter against either defendant in the amount of $60,000, which is the total agreed-upon settlement amount in this matter, less any payments made pursuant to the Agreement. (Confessions of Judgment, ECF No. 12 at 13–17; see also ECF No. 15 at 9–12 (executed versions of the Confessions)). Courts in this Circuit have held that confessions of judgment do not pose a barrier to the approval of a settlement agreement under Cheeks. See Mendoza v. LGRC Corp., No. 19 CV 8479, 2020 WL 1974210, at *2 (S.D.N.Y. Apr. 24, 2020) (holding "any potential unfairness to *defendants* inherent in the affidavits of confession of judgment is not a barrier to judicial approval of the Agreement under Cheeks and its progeny. . . [and], while there is a possibility that the liquidated damages provision in those affidavits could be deemed an unenforceable penalty in future proceedings . . . it would be premature for this Court to prejudge the issue in the context of a Cheeks review); see also Carnero v. Bagel Mentch, Inc., No. 21 CV 781, 2022 WL 3448660, at *3 n.2 (E.D.N.Y. Apr.12, 2022), report and recommendation adopted, 2022 WL 3446335 (E.D.N.Y. Aug. 17, 2022). This Court does not pass on the enforceability of those confessions of judgment at this time.

coercion, fraud, or collusion in this case, the Court finds that the total settlement amount reached is a fair and reasonable compromise.  See Wolinsky v. Scholastic Inc., 900 F. Supp. 2d at 335.

          C.      Attorneys' Fees and Costs

According to plaintiff's motion for settlement approval, $19,529.33 of the settlement amount will go to plaintiff's counsel as attorneys' fees and $1,412 will go to pay costs.  (See Pl.'s Ltr. at 2 n.2).  Plaintiff's costs consist of the $402 filing fee, $85 in fees related to service of process, and $925 for the mediator's fee.  Courts often award costs that are "incidental and necessary to [plaintiff's] representation."  Mitland Raleigh-Durham v. Myers, 840 F. Supp. 235, 239 (S.D.N.Y. 1993).  Plaintiff's counsel's fees reflect one third of the net settlement amount.[5]  Counsel notes that this was the fee arrangement reflected in his client's retainer agreements and that similar fee awards are routinely approved in this Circuit.  (Pl.'s Ltr. at 2).

Courts must assess the reasonableness of plaintiff's attorneys' fees, regardless of whether the fee has been negotiated as part of the settlement amount.  Beckert v. Rubinov, No. 15 CV1951, 2015 WL 6503832, at *2 (S.D.N.Y. Oct. 27, 2015) (quoting Lliguichuzcha v. Cinema 60, LLC, 948 F. Supp. 2d 362, 366 (S.D.N.Y. 2013)).  The Second Circuit has set forth six factors to determine whether attorneys' fees in FLSA settlements are reasonable:  "(1) the time and labor expended by counsel; (2) the magnitude and complexities of the litigation; (3) the risk of the litigation . . . ; (4) the quality of representation; (5) the requested fee in relation to the settlement; and (6) public policy considerations."  Goldberger v. Integrated Res., Inc., 209 F.3d 43, 50 (2d Cir. 2000) (omission in original) (quoting In re Union Carbide Corp. Consumer Prods. Bus. Sec Litig., 724 F. Supp. 160, 163 (S.D.N.Y. 1989)).

---

[5] (Total Award ($60,000) – Costs ($1,412))/3 = $19,529.33 (Attorneys' Fee Award).

6

In calculating attorneys' fees, courts have used one of two methods: the "lodestar" method and the "percentage-of-recovery" method. See Allen v. Taylor, 795 F. App'x 79, 80 (2d Cir. 2020) (summary order). When using the "lodestar" method, courts multiply the number of hours reasonably spent by counsel on the matter by a reasonable hourly rate. See Perdue v. Kenny A. ex rel. Winn, 559 U.S. 542, 546, 551–52 (2010); Millea v. Metro-North R.R. Co., 658 F.3d 154, 166 (2d Cir. 2011); Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany, 522 F.3d 182, 183 (2d Cir. 2008); Cowan v. Ernest Codelia, P.C., No. 98 CV 5548, 2001 WL 30501, at *7 (S.D.N.Y. Jan. 12, 2001), aff'd, 50 F. App'x 36 (2d Cir. 2002). Although there is a "strong presumption that this amount represents a reasonable fee," the resulting lodestar figure may be adjusted based on certain other factors, Cowan v. Ernest Codelia, P.C., 2001 WL 30501, at *7; see also Quaratino v. Tiffany & Co., 166 F.3d 422, 425 (2d Cir. 1999), and courts in this Circuit have applied a multiplier to the lodestar calculation. E.g., Fujiwara v. Sushi Yasuda Ltd., 58 F. Supp. 3d 424, 439 (S.D.N.Y. 2014) (holding "a multiplier near 2 should, in most cases, be sufficient compensation for the risk associated with contingent fees in FLSA cases"); see also Velandia v. Serendipity 3, Inc., No. 16 CV 1799, 2018 WL 3418776, at *5 (S.D.N.Y. July 12, 2018) (finding a multiplier of 1.2 to be a "reasonable lodestar modifier").

Instead of using the lodestar method, courts may also employ the "percentage of the fund" method. See McDaniel v. County of Schenectady, 595 F.3d 411, 417–18 (2d Cir. 2010) (collecting cases). With this method, courts in this Circuit have routinely found an award representing one-third of the settlement amount to be reasonable. See Romero v. Westbury Jeep Chrysler Dodge, Inc., No. 15 CV 4145, 2016 WL 1369389, at *2 (E.D.N.Y. Apr. 6, 2016) (citing cases). However, a one-third percentage may be "simply too great" in relation to the work performed. See Larrea v. FPC Coffees Realty Co., No. 15 CV 1515, 2017 WL 1857246, at *6

(S.D.N.Y. May 5, 2017) (declining to approve a one-third fee that would result in an 11.4 multiplier of the lodestar calculation).

Here, plaintiffs were represented by David Harrison, Esq., who is the Managing Partner of Harrison, Harrison & Associates, "a law firm dealing almost exclusively with employee rights ever since it was founded over twelve years ago." (Pl's. Ltr. at 3). In this case, counsel is seeking an award of attorneys' fees in the amount of $19,529.33, using the "percentage of recovery" method to seek compensation in the amount of roughly one third of the net settlement award. (Id. at 2). Given that counsel was able to navigate a settlement successfully and quickly between experienced counsel, the Court finds the award of fees is reasonable.

The other Goldberger factors also weigh in favor of finding the award fair and reasonable: the risks of litigation are high, "FLSA claims typically involve complex mixed questions of fact and law," Barrentine v. Arkansas-Best Freight Sys., Inc., 450 U.S. 728, 743 (1981), and the public policy goal of encouraging attorneys to take on FLSA and NYLL actions that protect the wages of workers is served here. See Beckman v. KeyBank, N.A., 293 F.R.D. 467, 481 (S.D.N.Y. 2013). Thus, as plaintiff's counsel is requesting one-third of the net settlement award, a percentage typically found reasonable in this Circuit, and upon review of the submissions and in consideration of the Goldberger factors set forth above, the Court approves the agreed-upon attorneys' fees.

CONCLUSION

In this case, after holding a fairness hearing and reviewing the parties' submissions, the Court finds that the settlement reached is a fair and reasonable compromise of the plaintiff's claims. The Court reached its determination after considering the amount received, the issues that might have limited recovery, and the fact that the parties engaged in arms' length

negotiations between experienced counsel. Cf. Wolinsky v. Scholastic, Inc., 900 F. Supp. 2d at 355 (examining the factors courts consider when approving FLSA settlement agreements). The Court also finds that plaintiff's counsel's request for fees and costs is reasonable.

The parties are directed to file a Stipulation of Dismissal in **two weeks**.

The Clerk is directed to send copies of this Order to the parties either electronically through the Electronic Case Filing (ECF) system or by mail.

**SO ORDERED.**
Dated: August 16, 2023
       Brooklyn, New York

*Cheryl L. Pollak*
Cheryl L. Pollak
United States Magistrate Judge
Eastern District of New York